# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**COBALT IRON, INC.,**

    Plaintiff,

    v.

**BIT LASSO, LLC, ET AL.,**

    Defendants.

Case No. 2:17-CV-02196-JAR-GLR

## MEMORANDUM AND ORDER

Plaintiff Cobalt Iron, Inc. brought this action against Defendants Bit Lasso, LLC and Mitch Haile, asking the Court to grant declaratory relief with respect to the parties' rights arising under an Independent Contractor Services Agreement. Before the Court is Defendants' Motion to Transfer Venue (Doc.7), requesting transfer of this matter to the United States District Court for the District of Massachusetts. The motion is fully briefed and the Court is prepared to rule. As described more fully below, the Court denies Defendants' motion to transfer.

**I.    Background**

Cobalt Iron, Inc. ("Cobalt") is a Delaware corporation with its principal place of business in Lawrence, Kansas. It primarily provides services and products for data protection. Richard Spurlock is Cobalt's CEO and founder. Cobalt has eleven employees and also contracts with outside service providers for specific projects and objectives.[1] Mitch Haile is a Massachusetts resident who resides in Somerville, Massachusetts and is the sole member of Bit Lasso, LLC ("Bit Lasso").

---

[1] Spurlock Decl. ¶ 5.

In October of 2012, Cobalt Iron, LLC and Haile executed an Independent Contractor Services Agreement (the "Agreement"), whereby Haile provided ongoing consulting, marketing, sales, and product development services to Cobalt Iron, LLC. The Agreement was signed by Haile as Contractor, and by Spurlock in his capacity as CEO of Cobalt Iron, LLC. Haile's compensation was set at $5,000 per month. The Agreement stated that it "shall be governed by the laws of Kansas, excluding its conflict of laws principles." Because Cobalt Iron, LLC's business involves technology and data security, Haile did not need to commute to Cobalt's only office building in Lawrence, Kansas and primarily worked from his home in Massachusetts. Bit Lasso sent invoices for services to Cobalt Iron, LLC from January 2013 through May 2015. Included on various invoices was a separate line item identified as "line of credit."

On June 23, 2013, Cobalt was incorporated. Prior to that time, Spurlock and Haile communicated about the future possibility of stock or stock option issuances, but no agreement was executed between the parties. In October 2016, Bit Lasso demanded payment of the "line of credit" appearing in a December 2014 invoice, as well as issuance of Cobalt Iron, Inc. stock, and Cobalt refused.

On March 9, 2017, Cobalt filed this action in Douglas County, Kansas District Court (hereinafter "Kansas Action"), seeking a declaratory judgment pursuant to K.S.A. § 60-1701 that (1) Plaintiff does not owe Defendants any additional compensation, (2) Plaintiff is not obligated to pay for a line of credit that he claims he did not agree to, (3) there is no enforceable agreement requiring Plaintiff to issue stock to Defendant, and (4) Massachusetts Wage and Payment Law is inapplicable.[2] Cobalt sent a copy of the petition via Certified Mail to Defendants the same day.

---

[2]Doc. 1-2.

Five days later, on March 14, 2017, Haile filed an official Non-Payment of Wage and Workplace Complaint Form with the Massachusetts office of the Attorney General, wherein he requested permission to sue the Plaintiff under the Massachusetts Wage and Payment Law.[3] Defendant received permission to sue Plaintiff on March 23, 2017.[4] On April 5, 2017, Defendants filed a separate lawsuit in the United States District Court for the District of Massachusetts (hereinafter "Massachusetts Action"),[5] alleging claims for (1) breach of contract; (2) quantum meruit; (3) unjust enrichment; (4) fraudulent misrepresentation; (5) conversion; (6) violation of Massachusetts Wage Act; and (7) unfair or deceptive trade practices[6]—all of which emanate from largely the same factual background as the Kansas Action.

The day before Defendants filed the Massachusetts Action, they removed the Kansas Action from the Douglas County District Court to this Court. On April 18, 2017, Defendant filed a Motion to Transfer Venue to the United States District Court for the District of Massachusetts. On June 12, 2017, the Massachusetts District Court stayed the Massachusetts Action pending this Court's resolution of his Motion to Transfer.[7]

## II. Discussion

### A. First-to-File Rule

Cobalt argues that this Court should apply the first-to-file rule and decline to transfer this case to the District of Massachusetts. Under the first-to-file rule, "when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the

---

[3]Doc. 8-2 at 3 ¶ 21.

[4]Doc. 15 at 9.

[5]*See Haile, et. al. v. Spurlock et. al.,* Case No. 1:17-cv-10591-PBS.

[6]Doc. 8-2.

[7]*Haile et al v. Spurlock et al*, No. 1:17-cv-10591 (D. Mass. Apr. 05, 2017) (Order Granting Stay, Doc. 30).

case."[8] The parties only need to be substantially similar for the rule to apply.[9] Further, "where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision."[10]

However, the presumption usually afforded to the party who files first is not a rigid or mechanical rule. Courts carve out exceptions to the rule where the first-filed suit constitutes an improper anticipatory filing or under the threat of a presumed adversary filing the mirror image of that suit in a different district.[11] In other words, "a district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction."[12] The Tenth Circuit has also indicated "that the court which first obtains jurisdiction should be allowed to first decide issues of venue."[13]

Here, there is nothing in the record to indicate Cobalt's lawsuit is an improper anticipatory filing. There is no evidence that Cobalt misled or lulled Defendants, nor is there any evidence Defendants refrained from filing suit in reliance on any representations from Cobalt. Instead, the record indicates that Haile did not file his request to sue with the Massachusetts Labor and Employment Board until five days after the Kansas action commenced. Because

---

[8]*Hospah Coal Co. v. Chaco Energy Co.,* 673 F.2d 1161, 1163 (10th Cir. 1982); *see also Roderick Revocable Living Trust v. XTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1296 (D. Kan. 2010) (collecting cases).

[9]*Id.* (citations omitted).

[10]*Cianbro Corp. v. Curran-Lavoie, Inc.,* 814 F.2d 7, 11 (1st Cir. 1987).

[11]*Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, No. 02-2448-KHV, 2002 WL 31898217, at *2 (D. Kan. Dec. 10, 2002) (citing *Boatmen's First Nat'l Bank v. KPERS*, 57 F.3d 638, 641 (8th Cir. 1995)) (stating "red flags" that suggest compelling circumstances to disregard the first-filed rule include notice that other side was considering filing lawsuit, and fact that first-filed suit was a declaratory judgment action).

[12]*Buzas Baseball, Inc. v. Bd. of Regents of the Univ. of Ga.*, 189 F.3d 477, 1999 WL 682883 (Table) (10th Cir. 1999) (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987)).

[13]*Hospah Coal,* 673 F.2d at 1163.

jurisdiction first attached in Kansas, the Court must determine the appropriate venue to decide the case.[14]

### B. Transfer under 28 U.S.C. § 1404

Defendants move to transfer this case to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a), where the Court may transfer a case to any district where it might have been brought "for the convenience of the parties and witnesses" and "in the interest of justice."[15] The parties do not dispute that this matter could have been brought in the District of Massachusetts. In determining whether to grant a motion to transfer, this Court considers the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.[16]

The Court examines each factor in turn, in considering whether this case should be transferred from its current trial location of Kansas City, Kansas.

#### 1. Plaintiff's Choice of Forum

Courts generally hold that the plaintiff's choice of forum weighs against transfer.[17] "[U]nless the balance is strongly in favor of the movant[,] the plaintiff's choice of forum should

---

[14] *Cessna Aircraft Co. v. Brown,* 348 F.2d 689, 692 (10th Cir. 1965).

[15] 28 U.S.C. § 1404(a)

[16] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

[17] *Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.*, 123 F. Supp. 2d 569, 572 (D. Kan. 2000).

rarely be disturbed."[18] In other words, the court will not transfer the case if doing so merely shifts the burden from one party to the other. The plaintiff's choice of forum receives less deference, however, if the plaintiff does not reside in the district.[19]

Here, Cobalt and its CEO Richard Spurlock reside in the District of Kansas. Cobalt's cause of action is based on a dispute over compensation for services and other benefits under the Agreement. The parties disagree on where the operative facts giving rise to the litigation occurred: Cobalt argues that the Agreement is governed by Kansas law, all of Defendants' invoices were sent to Kansas, and the so-called "intellectual property" Defendants claim was converted in located in Kansas. Defendants argue that the Consulting Agreement was negotiated in Massachusetts and the unpaid compensation relates to work Haile completed in Massachusetts. This factor is neutral.

**2. Accessibility of Witnesses and Other Sources of Proof**

In the Tenth Circuit, the convenience of witnesses is the single most important factor in deciding a motion to transfer.[20] The movant has the burden to demonstrate inconvenience by: (1) identifying witnesses and their locations; (2) indicating the materiality of their testimony; and (3) showing that the witnesses are unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.[21]

Defendants concede that they "[do] not foresee that witnesses will play a large or material role in the resolution of this matter."[22] Defendants argue, however, that to the extent that any

---

[18]*Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)).

[19]*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010).

[20]*Id.* (quoting *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

[21]*Id.*

[22]Doc. 8 at 12.

witnesses are necessary, "the majority of known witnesses… are located in Massachusetts."[23] Defendants name five potential witnesses they claim have information pertinent to the pending litigation. Three of these witnesses are currently employed by Cobalt and one is Haile. Defendants do not show or allege that the witnesses would be unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory processes would be necessary.

Cobalt alleges that "a number of witnesses are located in or around the District of Kansas"[24] and specifically names three in Spurlock's affidavit.[25] Given the relatively similar number of witnesses in Kansas and Massachusetts, the Court finds this factor neutral in the transfer analysis.

Likewise, the location of other sources of proof is a neutral factor in the transfer analysis. Because Haile completed the work remotely, it shows that the property could be easily transferred from either Kansas or Massachusetts. Defendants have offered no evidence regarding whether documents or other tangible evidence in this case would be difficult to produce in this forum, and thus this factor is neutral.[26]

### 3. Cost of Making Necessary Proof

It appears the cost of making necessary proof is greater in the District of Kansas because of expenses the non-party witnesses would incur in traveling to Kansas. Haile further asserts that he is of limited means compared to Cobalt, a growing corporation, and would suffer significant financial hardship if made to defend this matter in Kansas. As noted, however, Defendants have

---

[23]*Id.*

[24]Doc. 13 at 15.

[25]Doc. 13-1 ¶ 51.

[26]*See Zurich Am. Ins. Co. v. Acadia Ins. Co.,* No. 15-cv-1273-CMA-CBS, 2014 WL 3930487, at *6 (D. Colo. Aug. 12, 2014) (explaining, "in this era of electronically stored and transmitted information, the location of relevant documents (however voluminous) may carry significantly less weight in the section 1404(a) analysis.").

7

not demonstrated that the resolution of this case will require that witnesses provide live testimony in Kansas or that voluminous documents will need to be transported. Given the lack of evidence concerning the cost of making necessary proof in Kansas, this factor weighs against transferring venue.

### 4. Difficulties from Congested Dockets

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."[27] This factor is heavily dependent on statistics comparing the relative administrative burden of each concerned court. Cobalt contends that the median time from filing to trial is slightly over 28 months in the District of Massachusetts and approximately 22.7 months in the District of Kansas.[28] In addition, the number of cases pending in the District of Kansas is less than half the number pending in Massachusetts. Defendants do not address this factor. While Cobalt's statistics do not necessarily show the docket is unduly congested in the District of Massachusetts, that District would face a greater administrative burden in litigating this case, suggesting this factor weighs against transfer.

### 5. Advantage of a Local Court Determining Questions of Local Law

The parties disagree on which state has a greater interest in adjudicating a claim for unpaid wages under Massachusetts law. "When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale."[29] Based on the limited record before the Court, the threshold issue regarding Haile's Massachusetts Wage Act claim appears to

---

[27]*Navajo Nation v. Urban Outfitters, Inc.,* 918 F. Supp. 2d 1245, 1257 (D.N.M. 2013).

[28]Doc. 13 at Ex. 2.

[29]*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1170 (10th Cir. 2010).

be whether he was an employee of Cobalt or an independent contractor. Although neither party addresses this issue, this appears to be a question of Kansas law, as the Agreement states that it shall be governed by the laws of Kansas. This Court is well-versed in contract law, and Defendants have not indicated that there is a substantial difference in the local law such that there is any disadvantage to having the District of Kansas consider those claims. Indeed, if the case is transferred to Massachusetts, that court would have to conduct an analysis of the underlying Agreement under Kansas law. As such, this factor is neutral.

**6. Other Practical Considerations**

Plaintiff's choice of forum can be overruled in cases where denying transfer would not advance the goal of judicial economy.[30] Defendants cite to *Hill's Pet Products v. A.S.U., Inc.*, where the court decided to transfer the initial lawsuit brought by a Kansas plaintiff to California, even though the California lawsuit was filed a day after the plaintiff filed its complaint in Kansas.[31] The court reasoned that denying the motion to transfer would not advance the goal of judicial economy because the duplicative litigation would waste time, energy, and money.[32] Defendants argue that similarly, if this Court issued a declaratory judgment, the litigation in Massachusetts would still proceed. Furthermore, to the extent that any of the issues in the Massachusetts action are similar but addressed by a potential declaratory judgment issued this Court, the issues would need to be fully litigated in the Massachusetts court also. Subsequent to briefing the instant matter, however, Defendants filed an unopposed motion to file Counterclaims against Cobalt, asserting the same claims pending in the District of Massachusetts.[33]

---

[30]*Hill's Pet Prods., a Div. of Colgate-Palmolive Co. v. A.S.U., Inc.*, 808 F. Supp. 774, 777 (D. Kan. 1992).

[31]*Id.*

[32]*Id.* (citing *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir.1965)).

[33]Doc. 23. Defendants also seek leave to file a third-party complaint against Spurlock, to which Plaintiff has not agreed. Doc. 24.

Accordingly, denial of the motion to transfer would not affect judicial economy or efficiency as Defendants originally argued, as these practical considerations have been neutralized.

### C. Conclusion

Having weighed all the relevant factors under § 1404(a), the Court declines to grant Defendants' motion to transfer this case. The Court finds that Defendants have failed to demonstrate that Cobalt's chosen forum—Kansas—is sufficiently inconvenient to justify disturbing Cobalt's choice, or that transfer to the District of Massachusetts is warranted and will promote the interest of justice.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Transfer Venue (Doc. 7) is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 6, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE